[Civ. No. 11638.   Second Appellate District, Division One.—March 30, 1938.]

CLARENCE E. HENDRICKS, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Lewis D. Collings for Petitioner.

Everett A. Corten, Eldon B. Spofford and F. Britton Mc-Connell for Respondents.

YORK, P. J.—Petitioner alleges that on or about the 10th day of August, 1936, while employed by the respondent Cadmium Nickel Plating Company as a truck driver, he sustained injuries in the course of his employment when he picked up a box of metal parts weighing over 200 pounds; that as he started to turn to place said box upon his truck his foot came into contact with the wheel of a hand truck, which had been pushed up and stopped adjacent to the place where petitioner was handling said box of metal parts, and suddenly arrested a turning motion that he was then making. Petitioner felt a severe pain in the region of his right hip or lower right back, but after resting a few moments the pain diminished and he was thereafter able to drive his truck to the plant of respondent employer. Later in the day the pain became intense and petitioner was sent by his employer to McGinnis Staff Hospital for examination, where he was told by the examining physician that he had strained his sciatic nerve. He was treated for several days at this institution and was then sent to two doctors furnished by respondent insurance carrier, who treated him until approximately August 25, 1936, before any X-rays of the injured employee were taken. After said X-ray pictures were taken, petitioner was told by the doctor who took them that there was no injury to his hip or lower right back, and on or about September 1, 1936, said doctor instructed petitioner to return to his work in spite of the fact that petitioner at that time stated he had pain in his right hip and could not use or step on his right leg without pain. Relying upon said instructions of insurance carrier's doctor, petitioner returned to his work on the 2d day of September, 1936, and was given light work sitting at a bench which he was able to perform; on the following day petitioner

was asked by another employee to help carry or move a heavy box of parts from a truck. Petitioner felt a severe pain in the region of his right hip or lower right back when he took his first step carrying the box and on the second or third attempted step thereafter, his right leg collapsed under him and he fell to the floor. Petitioner was again examined by insurance carrier's doctors and was told that he was suffering from sciatic rheumatism, and was later told by another of insurance carrier's doctors that he was not suffering from any sciatic nerve trouble, but that he was suffering from arthritis; that his suffering was not caused by any injury received in the course of his employment, that he could not expect to receive medical attention from insurance carrier, but must obtain his own medical assistance. Thereafter X-rays were again taken and it was found that petitioner had received an impacted fracture of the right femur and that there was a definite shortening of the lower right extremity.

Two hearings were had before referees of the respondent commission, whereupon findings of fact were made denying petitioner any relief.

■ An examination of the so-called expert testimony upon which the findings of the commission are based discloses that there is a great deal of apparent conflict in the testimony of the doctors for the insurance carrier. Not that the testimony of each doctor conflicts with that of the others, but certain parts of each doctor's testimony conflicts with his own statements. They do not directly state that it would be impossible for a fracture to have occurred exactly as testified to by applicant, although that is the meaning that would be conveyed unless all of their statements were carefully and fully considered. However, it is a matter of common knowledge that bones of the leg of an ordinary man can be fractured by even a very small rotary motion of a foot or leg, if such motion is suddenly arrested, when the person making such motion is carrying a heavy weight. Petitioner suffered a partial fracture in this manner, which is shown by the uncontradicted evidence to have happened at the time the first injury was sustained. When the doctors ordered petitioner to resume work and the second injury (a complete fracture) occurred, petitioner was carrying a heavy weight and was turning, although his foot was not suddenly blocked at the

time of the second injury, as it was at the time of the first injury.

The indirect testimony of the doctors was to the effect that when the first examination and the first X-rays were made, the petitioner did not have or had not sustained a fracture; (some of them say that no X-rays were taken before the second injury) ; that when they made the second examination the X-ray which was then made showed an old fracture antedating the prior X-rays. A fracture at the place named by petitioner could readily have occurred exactly as petitioner testified, to wit: first, a partial fracture or cracking of the bone, and then when the second injury occurred, it is more than probable, as petitioner testified, the fracture became complete. This is a matter of common knowledge, even if in conflict with the so-called expert witnesses of the insurance carrier.

Taken as a whole, the testimony of the experts for the insurance carrier is inherently improbable, if they mean to testify that first a partial fracture and then a second complete fracture could not have occurred as petitioner says it did. In fact, petitioner's testimony is actually corroborated by their last statements. ▮▮ Although we are aware that the commission can make findings upon "secondhand hearsay evidence", we do not think this rule can possibly justify the commission in following such manifestly absurd and inherently improbable testimony, as it must have done here, in order to deny an award in favor of petitioner. Such purported evidence is in fact and in law no evidence at all, for it contradicts and denies the obvious laws of nature. The doctors, who testified that it was a pathological condition which caused the injury, testified that they were not pathologists, and the record does not show that they or anyone else discovered any kind of pathological condition that could have caused such a fracture.

The petition for rehearing which was granted by the commission contained many startling statements of fact as to the manner in which the record was made up. However, in the record of the last hearing which resulted in the award which is herein referred to, we note the following:

"Atty. Collings: I know what the issues were, I know what the stipulations were. I know what testimony has been taken on which no opportunity to cross-examine (has been given).

When you say there is some special point which has been made by the Commission as to what this Rehearing is to be directed to, that is something I have no knowledge of because I received no notice of it. If something of that character, I would like to see it.

"The Referee: This is a confidential memo that the Commission addressed to the Referee.

"Atty. Collings: Nothing confidential in these hearings."

So far as the record discloses, there was nothing further to show what this confidential memo was which the referee was using as her basis for the rehearing. If we had it, it might account for the nature of the award made. It might explain things which the record does not show, because, as we view the record, there is no actual contradiction of the fact that if proper X-rays were taken at the time of the first injury, undoubtedly the second injury would not have occurred; petitioner's trouble would not have been diagnosed as sciatic rheumatism or as arthritis, which condition the experts, who were employed by the insurance carrier, state was what caused the difficulty with which petitioner was suffering at the time he was examined by them immediately after his first injury. It was at this time that they made an examination of petitioner's back instead of examining his leg where the injury actually occurred. ▮ These experts appear to have ignored the uncontradicted evidence that the turning motion, which was imparted to the leg of petitioner at the time of the first injury when he was carrying a 200-pound weight, was suddenly arrested by the interposition of the wheel of the truck against petitioner's foot. It certainly does not take an expert to know that such an injury could occur exactly as related by petitioner, and as it is a matter of common knowledge, the court will take judicial cognizance of such fact.

It follows from the foregoing that the conclusion and award of the commission "that applicant take nothing from defendants herein, and that the defendants be and they are hereby relieved of all liability by reason of the claim asserted in this proceeding and dismissed herefrom" was erroneous, and that its decision to that effect must be and the same is hereby annulled. The application for an award is hereby remanded to the commission for further proceedings in accord with the views expressed in this opinion.

Doran, J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 25, 1938, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1938.