[Civ. No. 7569. Third Dist. Feb. 19, 1949.]

INDUSTRIAL INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, MYRTLE P. GABBERT et al., Respondents.

Leonard, Hanna & Brophy for Petitioner.

T. Groezinger for Respondents.

PEEK, J.—This is a petition for a writ of review of an award of death benefits to the widow of Ira Paul Gabbert, who died on November 27, 1947, survived by his said widow and three minor dependent children.

The respondent commission found that on or about October 27, 1947, decedent, while employed by the Carl Howe Lumber Company as a rigger, sustained injuries occurring in the course of and arising out of his employment which proximately caused and materially contributed to his death. The finding and resulting award is attacked by petitioner on the ground that there is a total lack of evidentiary proof to support it. From our examination of the record before us it appears that the petition is well founded and hence the award must be annulled.

At the hearing of the widow's application for death benefits it was established that on October 27, 1947, the employee suffered a blow over his left eye when he fell into the mill pond operated by the employer. After a short rest he drove to his home, took a warm bath, changed his clothing and went back to work. He continued working at his job as a rigger until November 11, 1947, when, because of his physical condition he remained in bed and continued to be so confined until his death on November 27, 1947.

The wife testified that after the accident the area over her husband's eye was swollen to a size slightly larger than a dollar, which swelling disappeared after a few days. On the evening of his accident or the following evening he complained of an "odd feeling" in his head, he was unable to sleep and had headaches which became increasingly severe but believing his condition to be the result of neuralgia he took nothing for relief except aspirin tablets. He first consulted Dr. Vernon W. Padgett of Grass Valley on November 5, 1947, and continued in that doctor's care until November 26 when he was taken to a Sacramento hospital and placed under the care of Dr. Howard A. Black of that city. Mrs. Gabbert further testified that her husband always had been a robust man, actively caring for their garden and participating in strenuous outdoor recreation. To her knowledge the first time he had ever consulted a physician was when he consulted Dr. Padgett. Similar testimony concerning the employee's physical condition was given by a mutual friend.

Two fellow workmen who were eyewitnesses to the accident testified that although they had noticed no visible evidence of an injury over the eye they had given no particular attention

to the condition of his face, but that following the accident he had complained to them of increasing headaches.

Dr. Padgett testified that when he first saw the employee he was complaining of intense pain both over and under his eye but that the witness found no evidence of injury nor could he find any reason for the pain. His report of the injury to the Department of Industrial Relations, pursuant to Labor Code section 6407, which was dated November 9, 1947, stated: "Acute tenderness over left zygomatic process. No evidence of fracture. No ecchymosis. Skin intact. Apparently a severe contusion over bone." The witness continued to treat the employee until he was sent to a Sacramento hospital on November 26. During this period there had been a marked change. In the words of the physician the patient had gone "rapidly down hill." X-rays taken on November 13th or 14th showed no further fracture. However, a lumbar puncture which was made about November 25 showed increased cranial pressure. In the opinion of the witness the patient was then suffering from a rapidly growing and highly malignant brain tumor and there was no causal connection between the fall and the subsequent death which was caused by the tumor. On cross-examination the doctor testified he would not be able to say that the injury complained of by the employee in any way precipitated the employee's death, although Dr. Padgett did not believe that it did; that such a probability was very slight, and that in his opinion the accident was coincidental. He further testified that head injuries could cause conditions similar to what he found, and that it was conceivable, but unlikely in the present case, that a severe blow to the head could aggravate or accelerate such a tumor, but in his opinion the blow sustained by the decedent was not sufficient to have produced such a result.

Dr. Black was not called as a witness. His medical report, which was subsequently filed with the referee, concluded with the statement that:

"The evidence seems clear that this patient's difficulty from the outset was attributable to his brain tumor. Apparently the injury which he sustained somewhere about November 1st was coincidental and not productive of the subsequent symptoms of which he complained.

"This type of tumor is the most rapidly growing and highly malignant of all primary brain tumors, and not infrequently causes the death of the patient within a few weeks

to a few months from the time of onset of the initial symptom."

The death certificate and the report of the autopsy surgeon as well as that of the pathologist at the Sacramento hospital shows the cause of death to have been Glioblastoma Multiform.

It is petitioner's contention that there is a total lack of evidence in the record to support the finding that the employee's death was due to his employment. The commission's answer thereto is to the effect that as the wife testified to visible evidence of a blow, and as Dr. Padgett stated he found no evidence of injury at the time of his first examination and further testified that a severe blow to the head could aggravate or accelerate such a tumor, therefore his conclusion that the blow did not contribute to the employee's death, was based on an erroneous understanding as to the severity of the blow or injury received, and hence contained an implied opinion that had the facts been contrary to his erroneous understanding the injury would have accelerated the death. From this argument the respondent concludes that its findings were predicated upon a reasonable inference and must be sustained.

▮▮▮ The duty of liberally construing the Workmen's Compensation Act which is cast upon the courts by section 3202 of the Labor Code does not change the well established rule that the inference, if any, upon which the commission may predicate its findings must be reasonably deducible from the evidence. In other words inferences which are drawn from purely theoretical possibilities shown by the testimony are speculative and conjectural and therefore insufficient to support an award. (*Brown* v. *Industrial Acc. Com.*, 44 Cal. App.2d 6, 12-13 [111 P.2d 931].) Such is the case presented herein.

▮▮▮ There is no testimony in the record that the employee suffered a sufficiently severe blow to the head to "proximately cause or materially contribute to his death," as the commission found. The testimony of Dr. Padgett, which was the only testimony in that regard, was that while a severe blow could aggravate or accelerate such a tumor as caused the employee's death, nevertheless in his opinion the blow suffered by the employee was not sufficient to produce such a result. Hence what are termed reasonable inferences by the commission are but mere conjectural possibilities predicated upon theoretical evidence deduced from the doctor's answer to

hypothetical questions. It necessarily follows that the findings of the commission are not supported by reasonable inferences drawn from the evidence and therefore are insufficient to support the conclusion reached.

The award is annulled.

Adams, P. J., and Thompson, J., concurred.