[Civ. No. 9266. Fourth Dist., Div. Two. Jan. 31, 1969.]

JOHN E. SPILLANE, Petitioner, v. WORKMEN'S COM-PENSATION APPEALS BOARD, GUERDON INDUS-TRIES, INC. et al., Respondents.

Jess A. Barnett for Petitioner.

Everett A. Corten, Sheldon M. Ziff and John H. Bolson for Respondents.

KERRIGAN, J.—Petitioner seeks the annulment of a Workmen's Compensation Appeals Board Decision After Reconsideration holding that half of his permanent disability and half of his need for further medical treatment were apportionable to the natural progress of his pre-existing congenital condition of spondylolisthesis.

On November 4, 1963, petitioner, then a young man of 26 years, sustained a low-back injury while employed as a car-

penter by Guerdon Industries, Inc. The injury occurred when the petitioner was struck in the legs and knocked on his buttocks by a mobile home roof which was being moved by a crane. The injury did not result in any compensable loss of time. However, medical treatment was required and in January 1966 a back brace was prescribed.

In October 1966 petitioner filed a claim with the board which resulted in an extensive hearing. Petitioner testified, medical reports were received in evidence, and the cause was submitted to the referee for findings and award. The referee had the benefit of a recommended rating of a permanent disability rating specialist. The referee determined the permanent disability of the applicant to be 39½ percent. He further found that petitioner's entire disability was wholly caused by the industrial injury. Consequently, an award issued in favor of petitioner for $8,295, representing full disability indemnity. The employer's carrier was further ordered to provide petitioner with all future medical treatment required for the cure or relief of the back injury.

The employer and carrier filed a petition for reconsideration maintaining that the referee should have decreed apportionment based on medical evidence indicating that petitioner suffered from a congenital condition characterized as spondylolisthesis. In support of their petition, the employer and carrier contended that the medical reports of applicant's examining and treating physicians reflected "a progressive change in applicant's condition . . . due solely to the pre-existing congenital condition. . . ."

In the report of the referee on petition for reconsideration, the referee noted that he had examined the medical reports of the orthopedic specialists and that these reports reflected the following: (1) The applicant's condition was asymptomatic before injury, and (2) the injury precipitated the symptoms and disability. The referee concluded that there was not one shred of evidence of ratable injury prior to the subject injury. The referee further stated that there was no evidence that the pre-existing condition would have become symptomatic without mechanical injury and, therefore, he recommended denial of the petition for reconsideration.

Notwithstanding the referee's report, the board, in its opinion and order granting reconsideration, determined that the industrial injury caused permanent disability of 19¾ percent after apportionment. It further ordered that only one-half of all future medical treatment resulting from the disa-

bility be paid by the carrier. The board predicated its opinion and order on the reports of two specialists, Dr. Johnson and Dr. Thomas. Their reports indicated that petitioner's disability was the product of two factors: (1) The expected progress of the spondylolisthesis and (2) the industrial injury. Dr. Thomas suggested the following apportionment: 60 percent to the pre-existing condition and 40 percent to the injury. Dr. Johnson recommended an apportionment of two-thirds to the underlying condition and one-third to the industrial injury.

The crucial issue presented on review is whether there is substantial evidence to support the board's decision.

Whether a disability is to be apportioned is a question for the board to determine, and any award based upon that determination will not be annulled if there is any substantial evidence to support it. (See *Fred Gledhill Chevrolet* v. *Industrial Acc. Com.,* 62 Cal.2d 59, 61 [41 Cal.Rptr. 170, 396 P.2d 586].) While it is the province of the board to make findings of fact and to resolve conflicts in the evidence (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 92 [199 P.2d 302]; Lab. Code, § 5953), and while the opinion of a single physician may constitute substantial evidence and may be adopted by the appeals board (*Allied Comp. Ins. Co.* v. *Industrial Acc. Com.,* 57 Cal.2d 115, 122 [17 Cal.Rptr. 817, 367 P.2d 409]), it is equally true that the decision of the board must be reasonable, that workmen's compensation statutes are to be construed liberally in favor of granting compensation (*Greydamus* v. *Industrial Acc. Com.,* 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296]), and that a finding of the board must be supported by substantial evidence. (See *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786 [69 Cal. Rptr. 68, 441 P.2d 908].)

Industry takes the employee as it finds him, and when a person suffering from a pre-existing disease is disabled by an injury proximately arising out of the employment, he is entitled to compensation even though a normal man would not have been adversely affected by the event. (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.,* 73 Cal.App.2d 555, 559 [166 P.2d 908]; *Berry* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 786, 793.)

The acceleration or aggravation of a pre-existing, non-disabling condition is an injury in the employment causing it, and if the resultant disability is entirely due to the industrial injury "lighting up" the previous dormant condition, then the employer is liable for that disability and there can be no

apportionment. (*Reynolds Electrical & Engineering Co.* v. *Workmen's Comp. App. Bd.*, 65 Cal.2d 429, 438, 442-443 [55 Cal.Rptr. 248, 421 P.2d 96].)

The board may apportion the disability only in those cases where part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" of the pre-existing disease. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 83-84 [172 P.2d 884].)

In the case under review, the evidence reveals that following his discharge from military service, the employee had worked a period of eight years for the same employer before sustaining injury. He had always enjoyed good health, was active in sports, and had never experienced any difficulty with his back prior to the injury. While the medical experts were in accord that petitioner was afflicted with spondylolisthesis—the failure of proper bony development in the lumbo-sacral region, accounting for a forward displacement of the fifth lumbar vertebra [L-5] over the body of the sacrum, which constitues a marked structural insufficiency in the lumbo-sacral spine—the orthopedists also agreed that the applicant's condition was entirely asymptomatic prior to the injury and that he suffered from no disability, ratable or otherwise, before the injury.

While the doctors also agreed that petitioner's disability was partially caused by his pre-existing congenital condition, they were remarkably candid in indicating that their attempt at apportionment represented, in effect, pure speculation or guesswork. Dr. Thomas emphasized that the claimant "had no symptoms until the fall, therefore, the decompensation of his condition is directly related to the injury. . . ." He further stated that his apportionment recommendation represented ". . . an arbitrary figure. . . ." Dr. Johnson indicated ". . . that it is practically impossible to [apportion]. . . ." the permanent disability between the congenital condition and the industrial injury.

The referee properly noted in his report on petition for reconsideration that there was no evidence of ratable disability prior to the subject injury, and further that there was no evidence that the congenital condition of the applicant would have become symptomatic without the mechanical injury. The referee further clearly indicated that future medical treatment could not be apportioned as between the pre-existing congenital condition and the industrial aggravation inasmuch as there had been no treatment necessary prior to

the November 1963 injury. He therefore concluded that there could be no apportionment of future medical treatment.

While in apportionment cases the question of whether a disability is partially due to the normal progress of the disease presents an issue of fact which the board may resolve on the basis of expert medical opinion, such expert opinion must disclose facts indicating a relationship between the applicant's disability and what would have been the normal progress of his pre-existing condition in the absence of his industrial injury; where the opinion of the doctor merely reflects the percentage of apportionment, such opinion does not constitute competent evidence upon which the board may rely in ordering the apportionment. (*Zemke* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 794, 799 [69 Cal.Rptr. 88, 441 P.2d 928].) An expert's opinion that a 50 percent apportionment is ''fair'' represents a mere legal conclusion. (*Zemke* v. *Workmen's Comp. App. Bd.*, *supra.*) An expert's opinion which does not rest upon relevant facts, or which assumes an incorrect legal theory, cannot constitute substantial evidence upon which the board may base an apportionment finding. (*Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689, 692-693 [192 P.2d 1].)

In the case under review, the specialists were frank in indicating that it would be impossible to allocate the disability where there were no unusual manifestations such as limitation of motion or pain prior to injury. They fairly conceded that the percentages testified to by them in an endeavor to apportion the disability were entirely conjectural. In actuality, the referee properly determined the apportionment issue when he decided that the total disability was entirely due to the industrial injury.

The decision of the board is annulled and the cause is remanded to the board for further proceedings consistent with the views expressed herein.

McCabe, P. J., and Fogg, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.