Filed 2/28/14  In re H.M. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | C072703 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | (Super. Ct. No. J-36364) |
| Plaintiff and Respondent, | |
| v. | |
| HEATHER V., | |
| Defendant and Appellant. | |

Mother Heather V. appeals the juvenile court's order denying her reunification services.  She concedes her son H.M. (the minor) suffered severe physical abuse, but contends there is not sufficient evidence that she either committed the abuse or that she knew or should have known her child had been abused.  We agree and shall reverse the juvenile court's order denying mother reunification services.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The minor was born in April 2011. Mother consistently took him in for his well-baby checkups and no musculoskeletal abnormalities or problems were noted. On May 4, 2012, at his 12- to14-month examination, mother reported the minor cried when he put pressure on his right wrist and did not seem to be using the wrist when crawling. Despite this report, the medical provider did not note or suspect any problems, and indicated examination of the minor's extremities and musculoskeletal systems was normal. There was no swelling or discoloration of the wrist and it could be manipulated. On May 7, 2012, mother took the minor to the emergency room for X-rays, again reporting he seemed to avoid use of his right arm when crawling. Mother reported that a large dog had knocked the minor down. On examination, the doctor noted the "[o]verall symptomatology seems somewhat minimal. He is able [to] use that elbow, but will not bear weight on it during crawling. . . . There were no fractures evident on the x-ray; however, given the child's age it is possible that there may be some sort of occult fracture." The doctor diagnosed the minor with an acute elbow sprain and placed him in an arm splint.

One week later, on May 15, 2012, mother again brought the minor to the emergency room. On May 11 or 12, the minor had fallen backwards and hit his head. Mother also reported the minor had hit his head on a toy once or twice. Mother noticed a bump on his head and called the doctor. The doctor advised her it was not necessary to come to the hospital unless the minor was vomiting. The minor appeared fine; he continued to play, crawl and acted normally.

On May 15, 2012, mother's boyfriend watched the minor while mother went to the store. Earlier in the day, the minor had been active and playing. When she got home, mother went to check on the minor and he was not responding normally. She picked him up and he turned really pale and threw up. Mother immediately took him to the hospital.

2

The only thing mother could think of that could have caused the minor's injuries was the fall a few days earlier; she was not aware of the minor being dropped or falling in any other fashion.

Due to the severity of his injuries, the minor was flown to Sacramento for further treatment. Mother returned home to get additional clothes. She advised her boyfriend that the minor was being flown to Sacramento and told him to leave the apartment and take his belongings.

The minor had a severe complex skull fracture with at least two impact sites. There were also multiple subdural hematomas. The examining doctors suspected child abuse, in part because the injuries were not consistent with the minor hitting his head on a toy or being knocked over by a dog. Angela Rosas, M.D., a child abuse expert, consulted on the case. She indicated the minor's injuries were consistent with a high force head injury. "The story of the pit bull happening [two] weeks ago is not consistent with the severity of this head injury. The child also has a significant injury to the right arm. . . . This is also a significant injury and unlikely caused by the family dog. There are also no abrasions or bite wounds to indicate that there was injury from a dog." Dr. Rosas also told the social worker that the impact to the minor was the type that could happen from a fall from a three-story building or severe auto accident, not from a simple fall in the home. Subsequent reports indicated the minor had a right forearm fracture with obvious healing callus, a right supracondylar humerus fracture, a left distal tibia-fibula fracture, and signs of healing. The right forearm fracture and tibia-fibula fracture appeared older. On May 19, Lehman Black, M.D., reported the minor's arm fracture was "unexplained" and "not fully investigated." Dr. Black also noted the investigation by Child Protective Services and law enforcement suggested mother's boyfriend was the abuser.

Mother stayed in Sacramento from May 15 to May 21. She was allowed to sleep in the minor's hospital room, hold him, feed him, and change him. The minor was released from the hospital on May 21, 2012, and placed in a foster home.

The Butte County Department of Employment and Social Services (Department) filed a Welfare and Institutions Code section 300[1] petition alleging serious physical harm based on the physical abuse (§ 300, subd. (a)), failure to protect as to both the physical abuse and mother's drug use (§ 300, subd. (b)), and severe physical abuse of a child under the age of five years old (§ 300, subd. (e)). The juvenile court found the allegations of the petition true and declared the minor a dependent.

The minor lived with mother from birth to May 15, 2012. Mother admitted to the social worker that she would test positive for marijuana and Vicodin if she were tested. Mother also reported father had a substance abuse problem. Mother's boyfriend had essentially lived with mother for the preceding two or three months. He was also prescribed methadone. The foster mother reported the minor appeared afraid of men.

The minor healed well physically. He was developmentally on target and did not exhibit any learning disabilities or behavioral problems. Mother participated in services, including a parenting support group, drug treatment, and drug testing. Mother did not test positive for marijuana, but did test positive for methamphetamine on June 7, 2012. Mother failed to test on June 14 and admitted she had used methamphetamine on two occasions. Between June 14 and August 30, 2012, mother had six negative tests and failed to test on three occasions. Between August 30 and October 8, 2012, mother had two negative tests and three failures to test. At the dispositional hearing in November 2012, mother provided a number of reasons for the missed tests, including repeated hospitalizations. After the minor was injured, mother obtained a restraining order against

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

4

her boyfriend and her only contact with him was to assist law enforcement. As a nonoffending parent, father was considered for placement, but based on his drug use and lack of relationship with the minor, the minor was not placed with him. Father participated in services and was developing a bond with minor. Both parents participated in supervised visits three times per week. The visits went well and both parents had good attendance.

The minor showed a positive bond with both parents. He communicated well with mother and reached for her at the beginning of visits. He was always happy to see mother and exhibited no fear or anxiety going to her. The minor was affectionate with mother and appeared to enjoy spending time with her.

The social worker acknowledged visits were going well for both parents and that mother was making progress in services. However, the social worker was concerned about mother's drug testing. She did not think mother could benefit from services until she stopped using drugs.

The Department recommended mother not be offered reunification services based on the bypass provisions of section 361.5, subdivision (b)(5) and (6).[2] Specifically, that the minor was brought under the jurisdiction of the juvenile court based on mother's conduct (§ 361.5(b)(5)) or that mother herself inflicted severe physical abuse on the child and reunification would not benefit the child (§ 361.5(b)(6)). The Department recommended services be provided to father.

The Department and father's counsel argued the court should order reunification services to father and deny them to mother. Counsel for mother and the minor both argued the court should grant mother services. Minor's counsel argued that the minor

---

[2] We will refer to these subdivisions as section 361.5(b)(5) and section 361.5(b)(6), respectively.

5

was closely and positively attached to both parents and mother appeared to be benefitting from services, although minor's counsel was also concerned about mother's missed drug tests.

The juvenile court denied mother reunification services, finding the bypass provisions of sections 361.5(b)(5) and 361.5(b)(6) applied. Specifically, the court stated, "Mother in this case knew or reasonably should have known that another person was physically mistreating the child. This child had numerous fractures, fractures in different stages of healing. And due to the severity of the injuries, the mother should have known something was wrong with her child. [¶] The doctor who examined the child and had been given the explanations that Mom stated were responsible for those injuries said that her explanations were not consistent with the injuries, that the impacts they saw on the skull could come from a fall from a three-story building or a severe auto accident, but not from a simple fall in the home. And she, Dr. Rosas, noted that the fractures were at opposite places on the skull. And so we not only had impact fractures to the skull, we had them to the right arm, right humerus fracture, healing tibia, fibula on the left side, and an ankle fracture. And due to the various stages of healing, they did not all happen at the same time. [¶] With regards to [section] 361.5(b)(6), the Court should apply this when the physical harm was inflicted by the parent or guardian whether by act or omission. And this Court finds that there is sufficient evidence that the harm was inflicted by Mom by her omission." The juvenile court also found mother had not consistently drug tested and found her reasons for not testing were not credible. The court ordered reunification services for father.

## DISCUSSION

As a general rule, reunification services are offered to parents whose children are removed from their custody, in an effort to eliminate the conditions leading to loss of custody and to facilitate reunification of parent and child. This furthers the goal of

6

preservation of family, whenever possible. (*Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 163.) But recognizing that it may be fruitless to provide reunification services, the Legislature has enacted statutory exceptions to providing reunification services under section 361.5, also known as reunification "bypass" provisions. (§ 361.5, subd. (b)(1)-(15); *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 845-846 (*Tyrone W.*).) We review the juvenile court's order denying reunification services under section 361.5, subdivision (b) for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Mother contends the trial court erred in finding both bypass provisions of sections 361.5(b)(5) and 361.5(b)(6) applied, as there was not substantial evidence to support these findings.

### I. There Is Not Substantial Evidence to Support the Denial of Reunification Services Under Section 361.5(b)(6)

Section 361.5(b)(6) provides, in pertinent part, that reunification services need not be provided when a court finds by clear and convincing evidence that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child . . . by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian. [¶] . . . [¶] A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body . . . by an act or omission of the parent or guardian, or of another individual . . . with the consent of the parent or guardian . . . ." When services are denied under section 361.5(b)(6), subdivision (k) of this section (hereafter, section 361.5(k)) requires the court to state on the record the basis for the finding of infliction of severe physical harm and specify the factual findings used to determine that the provision of reunification services to the offending parent would not benefit the child.

7

Mother does not challenge that the injuries inflicted on the minor constituted deliberate and serious injury. The Department does not address the propriety of the finding under section 361.5(b)(6) and appears to properly concede it does not apply.

The juvenile court found that section 361.5(b)(6) applied by virtue of mother's omissions. In general, subdivision (b)(6) applies to the parent who inflicted the severe physical harm on the minor (*In re Kenneth M.* (2004) 123 Cal.App.4th 16, 21, and "requires identification of the perpetrator [of the abuse] and [section 361.5(k)] requires certain factual findings not made by the juvenile court here." (*Kenneth M.*, at p. 21.) However, the application of subdivision (b)(6) "is not limited to the parent or parents whose act directly caused the child's injury." (*Tyrone W.*, *supra*, 151 Cal.App.4th at p. 851.) Infliction of severe physical harm may be based on "an act or omission" of the parent or "of another individual . . . with the consent of the parent." (§ 361.5(b)(6), 3d par.) For example, where parents are aware of their child's constant pain and disfigurement resulting from an accidentally broken leg, their failure to seek medical attention for two months constituted infliction of severe physical injury by omission. (*Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292, 301; see *Tyrone W.*, *supra*, 151 Cal.App.4th at p. 851.) Further, where a father observed the mother's acts of physical abuse of their child and took no action to protect him, and the child suffered obvious physical injury, the father may be found to have inflicted harm by omission or consent. (See *Tyrone W.*, *supra*, at p. 851, citing *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 744-745.) "[O]mission and consent both require actual knowledge, if not of the physical harm itself, then of another's abusive acts." (*Tyrone W.*, *supra,* 151 Cal.App.4th at p. 851.) Section 361.5(b)(6) does not apply to a negligent parent. (*Tyrone W.*, at p. 851.)

Here, there is no evidence mother knew of the physical harm being inflicted on her child, or knew of another's abusive acts and failed to act. There is no evidence that

mother failed to seek medical attention for the minor in the face of obvious physical injury or symptoms of pain. In fact, the evidence is directly to the contrary. Mother consistently took the minor in for his well-baby checkups and there were no concerns or injuries noted. When mother saw noticeable signs of injury, either in the child not using his right arm or being listless and vomiting, she immediately took him in for medical treatment. The initial examinations of the minor did not reveal that his arm was broken. There is no evidence mother knew about the abuse inflicted upon the minor and either consented to it or failed to act to prevent it, thus allowing it to continue. Moreover, the juvenile court did not make the requisite factual findings under section 361.5(k). Accordingly, denial of reunification services cannot be predicated on section 361.5(b)(6).

## II. There Is Not Substantial Evidence to Support the Denial of Reunification Services Under Section 361.5(b)(5)

Section 361.5(b)(5) provides that reunification services may be denied to a parent if the juvenile court finds by clear and convincing evidence that "the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian." It does not require identification of the perpetrator. As used in subdivision (b)(5), "conduct" "refers to the parent in the household who knew or should have known of the abuse, whether or not that parent was the actual abuser." (*In re Kenneth M.*, *supra*, 123 Cal.App.4th at p. 21.)

In finding mother knew or should have known of the abuse, the juvenile court relied upon the number of injuries in various stages of healing and the severity of the injuries and concluded she "should have known something was wrong with her child." There is no question the minor sustained numerous severe injuries, and it appears those injuries occurred over time.

As to the older injuries, there is no evidence in the record that there were any obvious signs of those injuries or that mother should have been aware of those signs.

9

There is no evidence that the child had any impaired ability as a result of those injuries. There is no evidence the minor exhibited symptoms of pain or had any visible sign of injury. Mother was consistent in taking her child in for well-baby checkups. At none of those examinations did any medical professional note an injury or concern regarding the minor's musculoskeletal system. No examining doctor ever reported any concerns regarding impaired development or abilities of the minor. There is simply no evidence that mother should have been on notice that someone was abusing the minor nor was there any evidence offered to show what mother should have known. (*L.Z. v. Superior Court* (2010) 188 Cal.App.4th 1285, 1292-1293.)

As to the broken right arm and the injuries sustained on May 15, the juvenile court relied on the doctors' expert opinions that mother's explanations of the injuries were not consistent with the injuries sustained, specifically, that the injuries to the skull could not have been caused by a fall in the home or falling on a toy. But, mother never claimed the minor's head injuries were caused by a fall in the home or the minor hitting his head on a toy. Rather, mother reported that the fall was the only thing she could think of that could have caused a head injury. She was not aware of any other falls or bumps to the head. Mother also made clear she was not home with the minor in the 45 minutes directly preceding his vomiting and admission to the hospital. That is, she did not know the cause of the head injury. Similarly, the history as relayed by Dr. Rosas, including the explanation of injuries, is not the same as the actual explanations provided by mother. Dr. Rosas found "[t]he story of the pit bull happening [two] weeks ago is not consistent with the severity of this head injury. The child also has a significant injury to the right arm. . . . This is also a significant injury and unlikely caused by the family dog. There are also no abrasions or bite wounds to indicate that there was injury from a dog." Again, mother never reported that the child's head injuries were as a result of the minor being knocked down by a dog. Mother reported the minor's arm was injured when he was

10

knocked down by a dog. The doctors who initially examined the minor for his arm injury did not find this explanation inconsistent with the injury or suspect abuse. In fact, it was not clear, even with X-rays that the child had sustained a broken arm. Moreover, a small child being knocked down by a large dog is not the sort of incident that would necessarily result in abrasions or bite wounds. The lack of those types of injuries does not demonstrate the explanation is inconsistent with the injury sustained.

"Substantial evidence is evidence that is reasonable in nature, credible, and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) . . . [E]xpert medical opinion evidence that is based upon a ' "guess, surmise or conjecture, rather than relevant, probative facts, cannot constitute substantial evidence." ' (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1110; see *Place v. Workers' Comp. Appeals Bd.* (1970) 3 Cal.3d 372, 378.)" (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1504.) Nor are expert medical opinions based on inadequate or erroneous medical history or examinations substantial evidence. (*Place v. Workers' Comp. Appeals Bd.*, *supra*, 3 Cal.3d at p. 378.) Here, the expert opinions that mother knew or should have known the minor was being abused were not based on accurate medical histories. As such, those opinions cannot be substantial evidence to support the denial of reunification services under section 361.5(b)(5).

The evidence does not support a finding that mother knew or should have known the minor was abused. Nor does the evidence in this record raise the inference that mother should have known of the existence of older injuries or that they were caused by abuse. Mother immediately reported injuries to her child and acted on the medical advice she was given. Once the severity of the minor's head injuries became apparent, and that they were not accidental, mother immediately kicked the boyfriend out of her house, got a restraining order against him, and assisted law enforcement in their investigation. (See *L.Z. v. Superior Court*, *supra*, 188 Cal.App.4th at p. 1293.)

11

We recognize that mother faces many challenges in successfully reuniting with the minor, not the least of which is her substance abuse problems.  On the record before us, however, the evidence does not support the denial of services under either sections 361.5(b)(6) or 361.5(b)(5).

## DISPOSITION

The order denying mother reunification services is reversed.


                                                                   BUTZ            , J.


We concur:


BLEASE          , Acting P. J.


MURRAY         , J.