[Civ. No. 15313. Third Dist. Dec. 19, 1975.]

JUDITH N. PATTERSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
GIBRALTER SAVINGS AND LOAN
ASSOCIATION et al., Respondents.

Counsel

Bobby D. Rodgers for Petitioner.

Mullen & Filippi and William J. O'Neil, Jr., for Respondents.

Opinion

PARAS, J.—Petitioner Judith Patterson seeks review and annulment of a decision of the Workers' Compensation Appeals Board (Board) after denial of reconsideration in which the Board upheld the finding of the workers' compensation judge that petitioner had sustained a work-related injury to her cervical spine, but not to her low back. The Board denied recovery to petitioner, having approved the finding of the judge that the cervical spine injury had not necessitated medical treatment and had caused no temporary total disability or permanent disability.

On June 4, 1974, the petitioner, a teller at a savings and loan institution, was changing paper in a computer when her hair became ensnarled in the computer's paper roller. Her neck was wrenched by a downward pull of her head and she suffered immediate pain. She continued work for the rest of the day and later that evening contacted Dr. Raulf Hanson, her personal physician. Apart from a drug prescription (Parafon) given by Dr. Hanson, she got no treatment for the neck injury.

According to petitioner's testimony at the hearing, problems with her low back arose approximately two weeks after the accident. At first, she experienced minor "catches" in her low back, which she considered to be nothing. While bathing on July 16, 1974, she bent over to wash her leg and suffered excruciating back pain radiating down into her right leg; she promptly saw an orthopedic surgeon, Dr. Calvin Nash, to whom she made no mention of the June 4 accident.[1] Dr. Nash prescribed bedrest, believing that she might have a herniated lumbar disc. Petitioner had no previous history of low back ailments.

[1] In response to a later inquiry from the employer, Dr. Nash stated: "At the time of the initial examination I was not aware that this was an industrial injury, I still do not have any specific reason to explain her problem on an industrial nature. . . ."

On July 26, 1974, petitioner was examined by a neurologist, Dr. Marshall Gollub (this appointment had been made about a month before in connection with the neck injury, before there was any low back pain) who found numbness in her right leg and foot. He noted the presence of a lumbar disc herniation syndrome and opined that "[i]t is possible that this problem is related to the accident at work."

Petitioner has not returned to work since July 16, 1974. She obtained employment as a receptionist in December 1974, after Dr. Nash recommended light work, but she terminated this job six weeks later for reasons unrelated to her health. At the time of the hearing, she still had numbness in her leg and foot and continued to experience discomfort when performing ordinary work activities.

## I

Petitioner first contends that there is no substantial evidence for the Board's conclusion that the work accident did not cause her low back condition, since the Board relied exclusively upon a medical opinion which misstated her medical history. She refers to the report of Dr. Wellesley Magan, an orthopedic surgeon, who examined her on January 21, 1975, at the employer's request. Dr. Magan concluded in his report:

"This patient, on the basis of her history and the medical records, probably has had a spraining mechanism of the cervical spine. This, I can well understand. So far as the low back is concerned, I simply do not have an answer for this. It does not seem rational to me that any injury of her upper back would produce a disc problem in her low back *forty or so days* later with no previous symptomatology.

"It would be my opinion if she does have disc pathology in the low back, I simply cannot relate it to the incident as described." (Italics added.)

Petitioner asserts that Dr. Magan negated any connection between the accident at work and petitioner's low back condition solely because he believed that symptoms of lower disc pathology should have arisen sooner than 40 days after the accident. She contends that Dr. Magan's 40-day figure is erroneous since she testified at the hearing that manifestations of low back trouble arose approximately two weeks after the work accident.

■ We note preliminarily that, although the employee bears the burden of proving that the injury was sustained in the course of her employment, the established legislative policy is that the Workers' Compensation Act should be liberally construed in the employee's favor and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. (*Turner* v. *Workmen's Comp. Appeals Bd.* (1974) 42 Cal.App.3d 1036, 1042 [117 Cal.Rptr. 358].) The applicant need only show the reasonable probability of industrial causation. (*McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313].)

■ Under section 5952 of the Labor Code,[2] the function of an appellate court is to review the entire record to determine whether the Board's conclusion is supported by substantial evidence. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) ■ Factual determinations of the Board must be upheld if there is substantial evidence to support them, and the relevant and considered opinion of one physician, though inconsistent with other medical opinions, normally constitutes substantial evidence. (*Place* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d at p. 378; *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822].) Medical reports and opinions are not, however, substantial evidence if they are based on surmise, speculation, or conjecture, or if they are known to be erroneous or based on inadequate medical histories and examinations. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592, 604 [117 Cal.Rptr. 831].)

■ Although petitioner contends that the clear import of her testimony on deposition and at hearing was that the onset of her lower back trouble was within two weeks of the June 4 accident, the record

[2]Section 5952 of the Labor Code provides:

"The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) The order, decision, or award was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

shows otherwise. The portion of petitioner's deposition upon which she relies actually indicates that her minor low back pain first began only a week before her July 16 visit with Dr. Nash and some 35 days after the accident; the severe back and leg pain arose two days before July 16. Dr. Nash's report of the July 16 examination confirms that petitioner told him that her lower back pain began a week before her appointment, and became serious two days before.

Even if it had been clearly established that petitioner's low back condition arose within two weeks of her accident, it does not appear that Dr. Magan's opinion was premised solely on the assumption that disc symptomatology first arose some 40 days after the accident. Petitioner conceded that she told Dr. Magan, as completely as she could, what had occurred since the accident. Dr. Magan also apparently examined the medical records prepared by Dr. Gollub, in which the onset of lower back problems was reported to be approximately two weeks after the accident. Furthermore, Dr. Magan's own report included the observation that petitioner experienced sharp pain in her lower back "several weeks" after the accident.

Petitioner contends that Dr. Magan's report is additionally suspect because it fails to offer an alternative explanation for her lower back pathology. In *Place* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d at page 380, a doctor's report finding that an employee's back condition was not caused by a serious fall at work was held insufficient to support the Board's decision where, in addition to other deficiencies, it failed to offer an alternative explanation for the workman's condition. In *Place,* however, an alternative explanation was deemed necessary because the doctor's report rejected without comment the unequivocal contrary conclusions of four other doctors. (*Id.* at pp. 379-380.) In addition, the diagnosis set forth in the report was purely conjectural in that it rested almost exclusively on the fact that the workman had not sought medical assistance for two months after the fall. (*Ibid.*) Since Dr. Magan's report does not reflect similar deficiencies, the *Place* decision is inapposite.

II

The workers' compensation judge concluded his opinion on decision with the remark, "[T]he applicant's low back problem was caused by an injury in July 1974, and not by the industrial accident of June 4, 1974." The Board, in its order denying reconsideration, concluded: "It therefore appears that the decision of the Workers' Compensation Judge was in all

respects correct . . . ." Petitioner contends that the finding of a subsequent July injury to her back is devoid of evidentiary support.

■ Findings of the Board will not be disturbed on appeal if they are supported by inferences which are fairly drawn from the evidence. (*Phoenix Indem. Co.* v. *Ind. Acc. Com.* (1948) 31 Cal.2d 856, 859 [193 P.2d 745].) Since the evidence supports the conclusion that there was no symptomatology whatever in the low back until one week before July 16, and that there was a degenerated disc on July 16, it is a fair and logical inference that a low back injury occurred in July. This is not speculation or conjecture.

But assuming that it was improper to find an injury in July, even if we were to delete this finding, it would not undermine the propriety of the Board's order denying reconsideration. It is apparent from a reading of the order that the denial of reconsideration was based upon a comparison and evaluation of the medical reports of Drs. Nash, Gollub, and Magan, together with petitioner's testimony, rather than on the existence of a subsequent injury to petitioner's back.

### III

Petitioner also contends that the Board arbitrarily rejected substantial evidence indicating that her low back condition was caused by the work accident. She first alludes to her testimony at the hearing concerning the onset of back pain approximately two weeks after the accident. Although she terms this testimony "substantial and unimpeached," we have noted it to be otherwise. ■ ■ ■ Petitioner also alludes to the report of Dr. Gollub, which cited the "possibility" of a relation between the accident at work and petitioner's back condition. Although words of conjecture in a medical report may be construed, in the proper context, as statements of medical probability (*Schnear* v. *Boldlrey* (1971) 22 Cal. App.3d 478, 484 [99 Cal.Rptr. 404]), the Board was free to adopt the less equivocal medical conclusions of Dr. Magan's report.[3]

Furthermore, there is no indication that the Board arbitrarily rejected Dr. Gollub's report. The salient portions of his report are as fully recounted in the Board's order denying reconsideration as are the

---

[3]"Since the Board's factual determinations are binding if supported by substantial evidence . . . it may choose the most persuasive among conflicting medical reports." (2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, § 287, pp. 1085-1086.)

924

conclusions of Dr. Magan. In reaching its determination that there was insufficient information with which to relate petitioner's low back condition to the accident of June 4, the Board expressly relied on its "consideration of the medical evidence of record herein," which consisted of all medical reports.

IV

Petitioner finally contends that the Board's order denying reconsideration failed to comply with section 5908.5 of the Labor Code, which requires inter alia that denials of reconsideration "state the evidence relied upon and specify in detail the reasons for the decision." This procedural demand aims at revealing the basis of the Board's action, at avoidance of careless or arbitrary action, and at assisting meaningful judicial review. (*LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d at p. 634; *Cal-Nat Airways, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 268 Cal.App.2d 93, 97 [73 Cal.Rptr. 815].) In the present case, the Board's order provides the reviewing court with adequate guidance as to the basis for its denial of reconsideration. The order reviews the salient portions of three medical reports and adopts the conclusion of Dr. Magan (who performed a complete neurological examination on petitioner) that the medical evidence does not relate petitioner's low back condition to the accident at work. This is sufficient compliance with the directives of section 5908.5.

The Board's decision is affirmed.

Puglia, P. J., and Regan, J., concurred.