Filed 12/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSE VELASQUEZ,<br><br>    Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, THE SALVATION ARMY et al.,<br><br>    Respondents. | 2d Civil No. B321638<br>(W.C.A.B. No. ADJ11436476) |

Our Workers' Compensation Act broadly defines employment and must be liberally construed to protect injured workers. Persons "rendering service for another" are generally presumed to be employees. (Lab. Code, § 3357.) [1] But the Legislature has expressly excluded from the definition of "employer" any private, nonprofit organization sponsoring a person who, as a condition of sentencing, performs services for the organization. (§ 3301, subd. (b).) The Legislature did so to encourage these organizations to provide drug and alcohol

---

[1] All statutory references are to the Labor Code unless otherwise stated.

rehabilitation programs at no cost to convicted defendants who could not otherwise afford treatment as an alternative to their incarceration.

As a condition of probation, Jose Velasquez entered a residential rehabilitation program sponsored by The Salvation Army. He was injured while working in its warehouse. The Workers' Compensation Appeals Board (the Board) concluded Velasquez was not employed by either The Salvation Army or the County of Santa Barbara (the County), and denied workers' compensation benefits.

We issued a writ of review. (§ 5950.) We conclude: 1) The Salvation Army is statutorily excluded from being an employer for workers' compensation purposes under section 3301; and 2) the record was inadequately developed during the administrative proceedings to determine whether the County was Velasquez's employer. The latter issue must be remanded to the Board for further consideration. Accordingly, we affirm in part, annul in part, and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

Velasquez pleaded guilty in Santa Barbara County Superior Court to a felony count of forgery. (Pen. Code, § 476.) The court suspended pronouncement of judgment, placed Velasquez on supervised probation for three years with terms, including that he "[e]nter and complete a residential treatment program as directed by Probation."

Velasquez entered The Salvation Army's residential adult rehabilitation center in Santa Monica for substance abuse treatment. The Salvation Army is a private, nonprofit organization. Its residential treatment program is a six-month program provided at no cost to the beneficiaries. The program

2

includes 12 hours per week of counseling, attendance at weekly religious services, meditation, and a work therapy component during which participants work in The Salvation Army's warehouse. The work therapy component is designed to help individuals become productive members of society.

Velasquez was injured while moving furniture at The Salvation Army's warehouse and sought workers' compensation for his injuries. Both The Salvation Army and the County denied his claim for benefits.

At the administrative hearing, the workers' compensation judge (WCJ) identified the issue as: "Employment and whether the applicant was an employee of Defendant The Salvation Army when he was the beneficiary of a Court-mandated drug diversion program per Labor Code Section 3352. [¶] The parties further raise the applicability of Labor Code Section[s] 3351 and 3301."

A probation department manager testified that The Salvation Army's residential treatment program was on the list of programs approved by the County. The manager testified that when the court orders a residential treatment program, the probation department can offer suggestions, but the defendant ultimately selects the program. The manager denied that the probation department only offered defendants one program option, but he could not swear that never occurred.

The Salvation Army's intake coordinator testified Velasquez was a "beneficiary" in their substance abuse program. Velasquez was referred to the program by "the Santa Barbara County Public Defender's Office or Santa Barbara County Probation Department or a combination of both." He worked in the warehouse as a "work therapy assignment[]," which is a program requirement.

Velasquez's intake paperwork at The Salvation Army stated: "This is [a] work therapy program. While working you may be required to do some lifting." The Salvation Army advised Velasquez he would be required to perform "manual labor, lifting, stacking, bending, stooping, carrying, driving, loading, unloading as well as being exposed to potentially dangerous instrumentalities and equipment." He signed a waiver form in which he agreed he was not an employee entitled to workers' compensation coverage.[2] The waiver also stated Velasquez would not sue for personal injury, disability, or death, "whether caused by the negligence of The Salvation Army or otherwise."

Velasquez testified that a probation officer spoke to him in the jail and told him that, instead of sending him to prison, the probation department was going to send him to The Salvation Army Rehabilitation Center in Santa Monica for six months to help with his drug addiction. The program was free and it was the closest one he could attend. Velasquez would receive counseling, attend Alcoholics Anonymous meetings, and "probably . . . do a little bit of working in a warehouse." Velasquez agreed because he did not want to go to prison. He testified he was not offered any other program.

Velasquez testified that he participated in The Salvation Army's rehabilitation program for six months. He worked five to six days a week in The Salvation Army's warehouse under the direction of the warehouse supervisor. He worked with other program beneficiaries and with regular employees. He also supervised other workers, taught them how to load the trucks, and attended one supervisors' meeting. Velasquez did not receive

---

[2] Contractual waivers of workers' compensation are invalid. (§ 5000.)

4

a paycheck, but received a weekly cash "gratuity" of $14 and $12 in "duckets" to purchase items from The Salvation Army store.

The WCJ did not permit testimony as to whether Velasquez was exposed to the same risks as regular employees.

During the program, Velasquez had no contact with the County. But The Salvation Army contacted his probation officer and reported everything he was doing and how he behaved. Velasquez was required to show his probation officer his program graduation certificate.

The WCJ concluded Velasquez was not an employee of either The Salvation Army or the County, and ordered he "take nothing" against either. The WCJ acknowledged that Velasquez's work "conferred a benefit upon the Salvation Army." But he reasoned The Salvation Army was not an employer because it was "sponsoring" Velasquez pursuant to section 3301, subdivision (b), "as a condition of his probation to get him clean and sober." The WCJ concluded: "Based upon this statutory scheme and the societal interest in having private, non-profit organizations working with County and State prosecutors and government in terms of probation and drug and alcohol intervention, that societal interest outweighs the workers' compensation general interest of finding persons to be employees whenever possible.

Velasquez petitioned the Board for reconsideration. On September 4, 2019, the Board granted Velasquez's petition for reconsideration but deferred ruling on the merits pending "further study." On May 31, 2022, the Board issued its opinion and decision after reconsideration, affirming the WCJ's order. The Board relied on *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055 (*Arriaga*) and *Dominguez v. County of Orange* (Apr.

5

8, 2016, ADJ 8935451) 2016 Cal.Wrk.Comp. P.D. LEXIS 180 (*Dominguez*). The Board concluded The Salvation Army was exempt from providing workers' compensation as a nonprofit sponsor (§ 3301, subd. (b)), and the County did not employ Velasquez because it did not exercise control over his working conditions. (*Velasquez v. Salvation Army* (May 31, 2022, ADJ 11436476) 2022 Cal.Wrk.Comp. P.D. LEXIS 162.)

Velasquez filed a petition for a writ of review in this court and we granted the petition. (§ 5950.)

### *Request for Remand*

In briefing filed in this court, the Board requests "the Decision be annulled and this matter remanded to the Appeals Board for further consideration" whether Velasquez was an employee of the County, and whether The Salvation Army was his employer. Velasquez and the County oppose the request.

The issue as to The Salvation Army's status as an employer was fully litigated before the WCJ, and, therefore, we decline the Board's request as to The Salvation Army. We conclude a remand is necessary as to the County for the reasons set forth below.

### DISCUSSION

" 'In reviewing an award or decision made by [the Board], we are governed by familiar principles. [The Board's] factual findings, when supported by substantial evidence, are binding on us. [Citations.]' [Citation.] ' " ' "Questions of statutory interpretation are, of course, for [a] court to decide. [Citations.]" ' " ' [Citation.] 'However, although [the Board's] conclusions on questions of law are not binding on this court [citation], and the interpretation of a labor statute is a legal question subject to our independent review [citation], we nevertheless "generally defer to

6

the [the Board's] interpretation of labor statutes unless clearly erroneous" [citation].' [Citation.]" (*Meadowbrook Ins. Co. v. Workers' Comp. Appeals Bd.* (2019) 42 Cal.App.5th 432, 436, as modified on denial of rehearing (Dec. 20, 2019).)

The California Constitution vests the Legislature with "plenary power . . . to create, and enforce a complete system of workers' compensation." (Cal. Const., art. XIV, § 4.) The Workers' Compensation Act (the Act) (§ 3200 et seq.) defines both "employer" and "employee," and provides exceptions to both definitions.

An "employer" generally includes a county, other public agency, and "[e]very person including any public service corporation, which has any natural person in service." (§ 3300.) Section 3301, subdivision (b), provides an exception for a "private, nonprofit organization while acting solely as the sponsor of a person who, as a condition of sentencing by a superior or municipal court, is performing services for the organization."

An "employee" is generally defined as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed." (§ 3351.) "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." (§ 3357.) " 'Employee' " excludes "a person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization." (§ 3352, subd. (a)(2) (former subd. (b).) "Employee" also excludes "[a] person performing voluntary service for a public agency or a private, nonprofit organization who does not receive remuneration for the services, other than meals, transportation,

lodging, or reimbursement for incidental expenses." (§ 3352, subd. (a)(9) (former subd. (i).)

The Act "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) "This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction." (*Arriaga, supra*, 9 Cal.4th at p. 1065.)

*The Salvation Army*

The Board correctly concluded that section 3301, subdivision (b), excludes The Salvation Army as an employer.

Section 3301 provides in part:

"As used in this division, 'employer' excludes the following:

"(a) Any person while acting solely as the sponsor of a bowling team.

"(b) Any private, nonprofit organization while acting solely as the sponsor of a person who, as a condition of sentencing by a superior or municipal court, is performing services for the organization."

The legislative intent supports the applicability of section 3301, subdivision (b). "The Finance, Insurance, and Commerce Committee, whose chairman authored the amendment that added subdivision (b) to section 3301, provided the following analysis: 'Quite often, a person convicted of a minor crime is given the opportunity of performing a certain amount of public service in lieu of a jail sentence. The sentence is normally satisfied by performing services under the sponsorship of a private nonprofit organization . . . . Accordingly, the purpose of the amendment is to clarify that they are not employees of the sponsoring private nonprofit organization.' (Finance, Ins., and

8

Commerce Com., Summary and Analysis of Assem. Bill No. 44 (1981-1982 Reg. Sess.) Jan. 27, 1981, p. 2.)" (*Arriaga, supra,* 9 Cal.4th at pp. 1065-1066, italics omitted.) Velasquez came within the purpose of the legislation when, in lieu of incarceration, he "perform[ed] services under the sponsorship of a private nonprofit organization." (*Id.* at p 1066.)

*Arriaga* concluded that both the County and Caltrans were employers for community service work. (*Arriaga, supra,* 9 Cal.4th at pp. 1062-1063.) But Caltrans is a government agency. The exception in section 3301, subdivision (b), applies only to a "private, nonprofit organization." *Arriaga* noted, "The result of this statutory scheme, admittedly, is that the workers' compensation rights of a person who elects to work in lieu of paying a fine turn on the nature of the entity, if any, to which the county assigns that person. *In all cases the county will remain liable for workers' compensation because it is the 'general employer.* If the county, as here, assigns the person to work for another a public entity, the latter will also be liable for workers' compensation because it is a 'special employer.' [Citation.] *But if the county assigns the person to work for a private nonprofit organization, that organization will not be liable for workers' compensation because the statute (§ 3301, subd. (b)) specifically exempts it from employer status.*" (*Arriaga, supra*, 9 Cal.4th at p. 1066, fn. 8, italics added.)

*Arriaga* stated that the distinction between employer status for government work sites and non-employer status for nonprofit work sites has a rational basis: "[T]o relieve the private nonprofit organization of the expense of workers' compensation insurance encourages such organizations to provide community service programs of the type now before us." (*Arriaga, supra*, 9

9

Cal.4th at p. 1066, fn. 8.) Encouraging nonprofit organizations to provide alternatives to incarceration is served by exempting both public service work as an alternative form of punishment, and rehabilitation programs that include a work component. As the Board concluded in *Dominguez*, The Salvation Army is exempt under section 3301, subdivision (b), because Velasquez "was compelled into an approved drug program or face incarceration, and drug rehabilitation was a condition of his sentencing." (*Dominguez*, *supra*, 2016 Cal.Wrk.Comp. P.D. LEXIS 180 at *9.)

Velasquez contends section 3301, subdivision (b), is inapplicable because The Salvation Army did not serve "solely" as his sponsor, but was also his employer. Velasquez argues the definition of the word "sponsor" in section 3301, subdivision (b), should be given the same meaning as the phrase "sponsor of a bowling team" under subdivision (a). The two subdivisions in section 3301, however, are not worded the same and bear no relation. Section 3301, subdivision (b), includes the phrase "performing services for the organization." This phrase does not appear in section 3301, subdivision (a), and contemplates that services will be performed for the nonprofit organization. The Salvation Army was a "sponsor," which is defined as " 'a person who takes responsibility for the actions of another,' " including " ' during a period of instruction, apprenticeship or probation.' " (*Dominguez*, *supra*, 2016 Cal.Wrk.Comp. P.D. LEXIS 180 at *9.)

Velaquez also contends that section 3301, subdivision (b), does not apply here because the superior court did not order him to perform public service or community service in lieu of a jail sentence. He argues he was only ordered to complete a residential treatment program. Velasquez seeks to exclude from section 3301, subdivision (b), services provided to a private,

10

nonprofit organization as a part of court-ordered rehabilitation as opposed to court-ordered community service. The statute, however, is much broader. Section 3301, subdivision (b), does not require public service or community service. Instead, section 3301, subdivision (b), applies when, as a condition of sentencing, the person is "performing services for the organization." The distinction drawn by Velasquez between court-ordered rehabilitation and court-ordered community service does not appear in the statute.

The superior court ordered Velasquez to "[e]nter and complete a residential treatment program as directed by Probation." The Salvation Army's residential treatment program was approved by the probation department. The superior court order for residential treatment necessarily included all aspects of the program, including "work therapy." Velasquez worked in the warehouse to comply with the court's order to complete the residential treatment program.

Because we conclude that section 3301 exempts The Salvation Army from being an employer in this circumstance, we need not reach the remaining contentions raised by The Salvation Army as to whether Velasquez is statutorily excluded from being an employee under the following: 1) the statutory exception to the definition of "employee" for "[a] person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization" (§ 3352, subd. (a)(2) (former subd. (b)); and 2) the exclusion from the definition of "employee" for "[a] person performing voluntary service for a public agency or a private, nonprofit organization who does not receive remuneration for the services, other than meals, transportation, lodging, or reimbursement for incidental

11

expenses." (§ 3352, subd. (a)(9) (former subd. (i).)

*Constitutionality of Section 3301*

Velasquez contends that section 3301 is unconstitutional as applied if it precludes him from workers' compensation benefits. We disagree.

The California Constitution vests the Legislature with "plenary power . . . to create, and enforce a complete system of workers' compensation." (Cal. Const., art. XIV, § 4.) "The Legislature's broad power over workers' compensation matters has been repeatedly affirmed" and " 'gives the Legislature complete, absolute, and unqualified power to create and enact the workers' compensation system.' " (*Stevens v. Workers' Comp. Appeals Bd.* (2015) 241 Cal.App.4th 1074, 1094.) The state Constitution does not "impos[e] a mandate on the Legislature to create and enforce an unlimited system of workers' compensation benefits," but "endow[s] that body expressly with exclusive and 'plenary' authority to determine the contours and content of our state's workers' compensation system, including the power to limit benefits." (*Facundo-Guerrero v. Workers' Comp. Appeals Bd.* (2008) 163 Cal.App.4th 640, 650.)

We do not agree that the inapplicability of workers' compensation here violates "the social public policy of this State" to "accomplish substantial justice in all cases." (Cal. Const., art. XIV, § 4.) Section 3301 resolves conflicting public policies of compensating injuries to criminal defendants and facilitating drug and alcohol rehabilitation programs by nonprofit organizations as alternatives to incarceration. We will not " 'second-guess the apparent policy decision of the Legislature' " in making this determination, which was clearly within its constitutional authority to make. (*Facundo-Guerrero v. Workers'*

12

*Comp. Appeals Bd., supra,* 163 Cal.App.4th at p. 651.)

*The County*

Velasquez also contends he was an employee of the County. He relies on the probation department's role in his enrollment in The Salvation Army program. The County denies it had an employment relationship with Velasquez.

The Board concedes its decision on reconsideration relied upon erroneous legal analysis and that there has been no evidentiary review or factual findings in this case with respect to whether the County was Velasquez's employer. The Board requests "the Decision be annulled and this matter remanded to the Appeals Board for further consideration" whether Velasquez was an employee of the County.

*Arriaga* noted the distinction between community service work performed for a government entity and that performed for a nonprofit organization but stated, "In all cases the county will remain liable for workers' compensation because it is the 'general employer.'" (*Arriaga, supra,* 9 Cal.4th at p. 1066, fn. 8.) In concluding the county was Arriaga's employer, our Supreme Court relied on three factors discussed in *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 398-399 (*Conroy*): control over the work, benefit to the county, and exposure to the same risks of employment faced by regular employees. (*Arriaga,* at p. 1062.)

*Conroy, supra,* 30 Cal.3d 391, found a "workfare" recipient was covered by workers' compensation. Los Angeles County required the recipient to work as a watchman for a school district as a condition of receiving public benefits. (*Id.* at p. 395.) Our Supreme Court concluded that the county was the employer based on three criteria: 1) "The County, though it did not directly

13

supervise his day-to-day activities, exercised its right of control by assigning him to jobs. Also, the County determined [Conroy's] rate of pay, specified the number of hours he was to work, and had the sole power to terminate his benefits if he did not perform his work to the County's satisfaction"; 2) "The County received a benefit from respondent's work, which helped to ensure the safety of a school within the County's boundaries"; and 3) "[B]y assigning [Conroy] to work at the school, the County exposed him to the same risks of employment faced by similar school employees." (*Id.* at pp. 398-399, fn. omitted.)

Section 5908.5 mandates that "[a]ny decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration . . . shall state the evidence relied upon and specify in detail the reasons for the decision." "This procedural demand aims at revealing the basis of the Board's action, at avoidance of careless or arbitrary action, and at assisting meaningful judicial review." (*Patterson v. Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 916, 924.)

As the Board concedes, the record contains insufficient factual findings and legal analysis from the Board so this court can conduct a meaningful judicial review of the question whether Velasquez was an employee of the County. The Board's failure to comply with section 5908.5 constitutes a sufficient basis to annul the Board's decision and remand for further proceedings. (*LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 633-634; *City of Fresno v. Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 467, 470.) Such a failure makes a review of the substantive issues "not appropriate." (*Painter v. Workers' Comp. Appeals Bd.* (1985) 166 Cal.App.3d 264, 272.)

14

Pursuant to the Board's confession of error and request for remand, we will annul the Board's decision on reconsideration issued May 31, 2022, and remand the matter to the Board for further consideration whether Velasquez was an employee of the County. (*Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 403 [substantial justice creates a duty to develop an adequate record despite delay in proceedings].)

We note that this matter languished for more than two years following the grant of reconsideration before the Board reached its decision on reconsideration. We encourage the Board to decide this matter with reasonable dispatch upon remand so the parties will have a complete resolution of these important issues. (See, e.g., *Earley v. Workers' Compensation Appeals Board* (2023) 94 Cal.App.5th 1.)

DISPOSITION

The order of the Workers' Compensation Appeals Board on reconsideration is affirmed to the extent that it concluded The Salvation Army was not Velasquez's employer. The Board's decision as to the County is annulled and this matter is remanded to the Board for further consideration whether Velasquez was an employee of the County.

Velasquez is awarded costs.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

I concur:


YEGAN, J.

15

BALTODANO, J., Concurring and Dissenting:

I agree the matter must be remanded to the Board to develop an adequate record regarding whether the County was an employer.  But I respectfully disagree with the conclusion that The Salvation Army was not an employer for workers' compensation coverage.

As a condition of his felony probation, the superior court ordered Velasquez to complete a residential treatment program. The court did not order him to perform work for The Salvation Army.  Velasquez thus qualifies as an employee eligible to file a claim for workers' compensation after he suffered an injury while performing work assignments required solely by The Salvation Army.

At the center of this controversy is Labor Code[3] section 3301, subdivision (b), which for workers' compensation coverage excludes from the definition of an "employer" "[a]ny private, nonprofit organization while acting solely as the sponsor of a person who, *as a condition of sentencing* by a superior or municipal court, is performing services for the organization." (Italics added.)  It is susceptible to two interpretations.

Under the first interpretation, the labor The Salvation Army required was not "a condition of sentencing."  The sentencing court ordered Velasquez to participate in a rehabilitation program as a term of felony probation, and did not order him to perform services for a nonprofit organization.  Under this interpretation, the exemption in section 3301, subdivision (b) would not apply and Velasquez would qualify as an employee.

The second interpretation, adopted by my colleagues, would apply the exemption because a rehabilitation program was a

---

[3] Undesignated statutory references are to the Labor Code.

condition of sentencing, and Velasquez performed services while fulfilling that condition, regardless of whether such work was imposed by the court.

Because there is no evidence that the superior court ordered Velasquez to "perform[] services for" The Salvation Army "as a condition of sentencing," I conclude the former interpretation is more appropriate and the exemption does not apply. "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) This interpretation is supported by the plain terms in section 3301, subdivision (b), the presumption in favor of workers' compensation coverage, the legislative history, and public policy.

*Plain language*

By its express terms, section 3301, subdivision (b), applies only where services are performed for a nonprofit organization "as a condition of sentencing." The superior court here did not impose a court-ordered condition of probation requiring Velasquez to perform services for The Salvation Army. Instead, the court ordered Velasquez to felony probation, including that he participate in a residential treatment program. It was The Salvation Army, not the court, that imposed the "work therapy" requirement as a component of its residential treatment program. Because Velasquez did not render services for The Salvation Army as a condition of sentencing, the exemption in section 3301, subdivision (b), does not apply.

Requiring substance abuse treatment as a term of probation serves different purposes than ordering community

2

service as an alternative punishment to satisfying a jail sentence or paying a fine. A "sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and what conditions should be imposed." (*People v. Welch* (1993) 5 Cal.4th 228, 233; *People v. Lent* (1975) 15 Cal.3d 481, 486; Pen. Code, § 1203.1, subd. (j).) "A court may impose probationary conditions it determines 'fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .' " (*People v. Prudholme* (2023) 14 Cal.5th 961, 965.)

In exercising its discretion to grant probation, the superior court here made no determination about the appropriateness of The Salvation Army's "work therapy" requirement as a term of felony probation. Nor did the superior court specify The Salvation Army as the residential treatment program provider or order Velasquez to perform work there. Indeed, there is no evidence the court was even aware of The Salvation Army's work requirement. Velasquez could have satisfied the residential treatment requirement at any program, including one that did not require him to work. The Salvation Army dictated the requirements for its program, including "work therapy," chapel, and morning devotion, but those conditions are not tantamount to court-ordered sentencing conditions.

In *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1059 (*Arriaga*), the Alameda County Sheriff assigned Arriaga to work for the state Department of Transportation (Caltrans) as part of a sentence to work off an unpaid speeding ticket. Caltrans assigned Arriaga to clean a ventilation duct in a tunnel,

3

where she was allegedly injured while performing the work.  (*Id.* at pp. 1059-1060.)  Our Supreme Court concluded that Arriaga was an employee of both the county and Caltrans.  (*Id.* at p. 1063.)

In a footnote, *Arriaga* said the exemption of section 3301, subdivision (b), would apply "if the county assigns the person to work for a private nonprofit organization."  (*Arriaga, supra,* 9 Cal.4th at p. 1066, fn. 8.)  But that situation did not occur in *Arriaga.*  Nor did it occur here.  Velasquez was not assigned to work, but was referred to The Salvation Army for "residential [drug] treatment."  The *Arriaga* footnote noted the purpose of section 3301, subdivision (b): "to relieve the private nonprofit organization of the expense of workers' compensation insurance [, which] encourages such organizations to provide community service programs *of the type now before us.*"  (*Arriaga,* at p. 1066, fn. 8, italics added.)  But the rehabilitation program here is not of that "type."

Unlike Arriaga, who was given a "weekender" community service assignment to pay off a traffic ticket, the court here suspended imposition of sentence, placed Velasquez on felony probation, and ordered him to participate in a substance abuse treatment program.  The Salvation Army's requirement that Velasquez "continuously" perform manual labor in its warehouse alongside payroll employees and supervise others for 40 to 48 hours per week for six months is a far cry from the weekend community service ordered in lieu of a fine in *Arriaga.*

*Statutory presumption*

The Worker's Compensation Act (the Act; § 3200 et seq.) "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in

4

the course of their employment." (§ 3202.) This principle has been repeatedly reaffirmed by precedents of our Supreme Court. (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1051; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290; *People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 725.) "This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction." (*Arriaga, supra*, 9 Cal.4th at p. 1065.)

"The purpose of the Act is to protect individuals against the special risks of employment. [Citations.] 'The Act intends comprehensive coverage of injuries in employment . . . by defining "employment" broadly in terms of "service to an employer." ' " (*Arriaga, supra*, 9 Cal.4th at p. 1061.) A traditional "contract of hire is *not* 'a prerequisite' to the existence of an employment relationship." (*Ibid.*) Workers' compensation is intended to apply to "any and all workers . . . to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment." (Cal. Const., art. XIV, § 4.) And " '[i]f a provision in [the Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.]" (*Arriaga*, at p. 1065.) Concluding The Salvation Army was Velasquez's employer under the circumstances here is a reasonable statutory interpretation that provides workers' compensation coverage.

*Legislative history*

The conclusion that The Salvation Army was Velasquez's employer is bolstered by the legislative history for section 3301, subdivision (b). My colleagues assert that the Legislature enacted the sponsorship exemption for nonprofit organizations

5

"to encourage these organizations to provide drug and alcohol rehabilitation programs at no cost to convicted defendants." (Maj. opn., *ante*, pp. 1-2.)  But the legislative history reveals no such purpose.  Instead, the Legislature intended court-ordered community service work to be a sentencing alternative and that nonprofit organizations sponsoring such work be excluded as employers.

The Department of Industrial Relations, of which the Board is a part, stated the legislation would "exclude from the definition of 'employer', non-profit organizations, to the extent they use the labor of persons sentenced by municipal or superior courts to perform services for them."  (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 44 (1981-1982 Reg. Sess.) (Apr. 12, 1981) p. 1.)  And the Assembly committee report quoted by my colleagues (maj. opn., *ante*, at pp. 8-9) makes clear the exemption applies when " 'a person convicted of a minor crime is given the opportunity of performing a certain amount of public service in lieu of a jail sentence.  The sentence is normally satisfied by performing services under the sponsorship of a private nonprofit organization. . . .  Accordingly, the purpose of the amendment is to clarify that they are not employees of the sponsoring private nonprofit organization.' (Finance, Ins., and Commerce Com., Summary and Analysis of Assem. Bill No. 44 (1981-1982 Reg. Sess.) Jan. 27, 1981, p. 2.)."  (*Arriaga, supra*, 9 Cal.4th at pp. 1065-1066.)

Here, the court did not sentence Velasquez "to perform services for" The Salvation Army, or to perform work "in lieu of a jail sentence."  Nor was his sentence "satisfied by performing services."  Because Velasquez was ordered to complete three years of felony probation, the court retained jurisdiction to

sentence him to up to three years in jail if he violated probation, even after completing The Salvation Army's six-month treatment program. (Pen. Code, §§ 473, subd. (a), 1170, subd. (h)(2), 1203.2, subd. (c).)

*Public policy*

Public policy is also served by providing workers' compensation coverage here. In *State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd.* (1970) 8 Cal.App.3d 978, the court held that a county jail inmate was entitled to workers' compensation for injuries received while working on a road crew. The court stated, "[T]he policy underlying modern penology places great stress upon the theory of rehabilitation of those convicted of crime. . . . Voluntary work projects are a further and valuable means towards the accomplishment of this end." (*Id.* at p. 983.) Patients in a state hospital are similarly covered by workers' compensation for "injury arising out of and in the course of a vocational rehabilitation program work assignment" (§ 3370.1), as are state prison inmates who suffer injuries arising from assigned work (§ 3370). Public policy also supports workers' compensation coverage when a nonprofit organization orders a probationer to work as part of a rehabilitation program.

Denying workers' compensation benefits may also leave injured program participants like Velasquez with no remedy for injury or disability incurred while rendering services. The Salvation Army's waiver form included an agreement to not sue for injuries caused by its negligence. During oral argument in this matter, counsel for The Salvation Army contended that Velasquez was not covered by workers' compensation but would also be barred from bringing a civil suit because workers' compensation is the "exclusive remedy." The Salvation Army's

7

position—that Velasquez has no recourse, even if injuries were caused by its negligence—is contrary to the public policy of providing compensation to persons injured while rendering services to another. (Cal. Const., art. XIV, § 4; § 3202.)

The Salvation Army argues it will be forced to discontinue all its rehabilitative programs if required to provide workers' compensation coverage to Velasquez. Whether the workers' compensation exemptions should be expanded is a legislative decision. The Legislature has " 'plenary' authority to determine the contours and content of our state's workers' compensation system, including the power to limit benefits." (*Facundo-Guerrero v. Workers' Comp. Appeals Bd.* (2008) 163 Cal.App.4th 640, 650; Cal. Const., art. XIV, § 4.) The Legislature may balance the public policy of encouraging nonprofit organizations to provide rehabilitation services against the countervailing policies of providing probationers with compensation if they are injured while rendering services to the organization.

*Dominguez v. County of Orange*

I am not persuaded by the unpublished panel decision in *Dominguez v. County of Orange* (Apr. 8, 2016, ADJ 8935451) 2016 Cal.Wrk.Comp. P.D. LEXIS 180 (*Dominguez*).[4] After Dominguez

---

[4] *Dominguez* is not binding authority on Board panels or workers' compensation judges because it is not reported in the California Workers' Compensation Reporter, and is a three-member panel decision rather than an en banc decision. (Cal. Code Regs., tit. 8, § 10325, subd. (a); *Griffith v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1264, fn. 2; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1424, fn. 6.) Nor has it been designated a "[s]ignificant panel decision[]," which "involve[s] an issue of general interest to the workers' compensation community but [is] not binding

violated probation, his probation officer gave him the option of entering a residential drug program to avoid jail.  Dominguez was injured while unloading donor goods as part of the work required by The Salvation Army.  (*Id*. at *5-6.)  The Salvation Army was dismissed by stipulation from the workers' compensation claim.  (*Id*. at *2.)  The Board nonetheless opined in dictum that The Salvation Army was not an employer but instead a "sponsor" pursuant to section 3301, subdivision (b).  (*Dominguez*, at *7.)

This dictum in *Dominguez*, *supra*, 2016 Cal.Wrk.Comp. P.D. LEXIS 180, erroneously applied section 3301 because the court did not sentence Dominguez to perform services for a private nonprofit organization.  It does not apply to a situation where, as in *Dominguez*, and as here, the court ordered completion of a rehabilitation program and the nonprofit—not the court—included work as part of its program.

*Alternative theories*

Because they conclude section 3301, subdivision (b), exempts The Salvation Army from providing workers' compensation coverage, my colleagues do not reach two alternative theories of exemption.  I conclude these exemptions do not apply.

The definition of "employee" in the Act excludes "[a] person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization."  (§ 3352, subd. (a)(2) (former subd. (b).)  The record does not show such an

___

precedent."  (Cal. Code Regs., tit. 8, § 10325, subd. (b).)  Even published Board decisions are not binding on this court.  (*Land v. Workers' Comp. Appeals Bd.* (2002) 102 Cal.App.4th 491, 495, fn. 2.)

9

arrangement here.  There was no evidence Velasquez performed labor in return for "aid or sustenance," or that it was "calculated to be the equivalent of his necessaries of life."  (*Hoppmann v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1119, 1125 (*Hoppmann*).)  Instead, The Salvation Army categorized Velasquez's labor as "work therapy."

Nor do I find applicable the exclusion from the definition of "employee" for "[a] person performing voluntary service for a public agency or a private, nonprofit organization who does not receive remuneration for the services, other than meals, transportation, lodging, or reimbursement for incidental expenses."  (§ 3352, subd. (a)(9) (former subd. (i).)  Work compelled by fear of criminal penalties is not "voluntary service" pursuant to this provision (*Arriaga*, *supra*, 9 Cal.4th at p. 1064), and is not performed "out of charitable generosity" (*Hoppmann*, *supra*, 226 Cal.App.3d at p. 1123).  Moreover, the cash and duckets Velasquez received, however minimal, may be considered remuneration.  (See *State Compensation Ins. Fund v. Workmen's Comp. Appeals Bd.*, *supra*, 8 Cal.App.3d at pp. 979, 983 [county employment of inmate doing road work established by "gratuity" of "credit slips" worth 50 cents per day]; but see *Hoppmann*, at p. 1126 [persons receiving "wages not merely nominal" are covered by workers' compensation].)

*Conclusion*

Liberally construing section 3301 (Cal. Const., art. XIV, § 4; § 3202; *Veilleux v. Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 235, 241-242), I conclude The Salvation Army was Velasquez's employer under the Act.  Because the Board erred in concluding otherwise, I would annul its order.  I concur with the remand to the Board regarding whether the County was an

10

employer, and respectfully dissent from the opinion that The Salvation Army was not an employer.

CERTIFIED FOR PUBLICATION.


BALTODANO, J.

11

State of California
Workers' Compensation Appeals Board

_____

The Law Office of Daniel K. Simon, Daniel K. Simon and Carolyn Layfield for Petitioner.

Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

Bradford and Barthel and Louis A. Larres for Respondent the Salvation Army.

Rosenberg Yudin, Lawrence Kirk; Peatman Law Group and Lance Peatman for Respondent County of Santa Barbara.